***NOT FOR PUBLICATION***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| DAVID BEHAR, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.: 20-05206 (FLW) |
| | : | |
| v. | : | |
| | : | **OPINION** |
| PHILIP D. MURPHY, in his official | : | |
| capacity as Governor of the State of | : | |
| New Jersey; and PATRICK J. | : | |
| CALLAHAN, in his official capacity | : | |
| as Superintendent of the New Jersey | : | |
| Division of State Police and as State | : | |
| Director of Emergency Management, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**WOLFSON, Chief Judge:**

*Pro se* Plaintiff, David Behar ("Plaintiff"), has filed a Complaint asserting that various executive orders, executed by Philip D. Murphy ("Governor Murphy"), in his official capacity as Governor of the State of New Jersey, and Patrick J. Callahan, in his official capacity as Superintendent of the New Jersey Division of State Police and as State Director of Emergency Management, (collectively, "Defendants"), violated the Fifth, Ninth, and Fourteenth Amendments of the United States Constitution, as well as the Commerce Clause. Before the Court is Defendants' motion to dismiss Plaintiff's Amended Complaint, arguing that Plaintiff's claims are moot, he failed to establish standing, pursuant to Fed. R. Civ. P. 12(b)(1), and failed to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, Defendants' Motion to Dismiss is **GRANTED**; all claims against Defendants are dismissed with prejudice.

I. **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff is a Pennsylvania resident and a psychiatrist authorized to treat patients in New Jersey. On April 28, 2020, Plaintiff filed a complaint, alleging that Executive Order 107 and Administrative Order 2020-8, which were issued by Governor Murphy in response to the ongoing COVID-19 pandemic, prohibited him from renting a property he owns in Margate, New Jersey, to a seasonal tenant, which deprived him of all economically beneficial use of the property and constituted a taking in violation of the U.S. Constitution. The Executive Order in question required that "'[a]ll New Jersey residents shall remain home or at their place of residence,' unless they were leaving their home for any of a number of enumerated reasons, including obtaining goods and services from essential retail businesses and restaurants, seeking medical attention or social or emergency services, going to work, visiting family, engaging in outdoor recreation, or leaving out of fear for their safety or at law enforcement direction." (Executive Order 107 at ¶ 2.)[1]

On June 11, 2020, Plaintiff filed an Amended Complaint in which he abandoned his takings claims. Instead, the Amended Complaint seeks a 1) declaratory judgment that the Executive and Administrative Orders violate the Fifth, Ninth, and Fourteenth Amendments of the United States Constitution, as well as the Commerce Clause; 2) an injunction restraining Defendants from enforcing the orders; and 3) attorneys' fees and costs.[2] (Complaint, at ¶ 20-22.) Plaintiff alleges

---

[1] "As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings.... However, an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotation marks omitted) (citations omitted). Here, the Court may consider Executive Order 107, and other subsequently issued Executive Orders and Administrative Orders that relate to the COVID-19 pandemic for resolution of this motion.

[2] *Pro se* litigants are not eligible for an award of "attorney's" fees. *See*, *e.g.*, *Beebe v. Schultz*, No. 14-1385, 2014 WL 2196767, at *2 n.8 (D.N.J. May 27, 2014)("To the extent Plaintiff seeks attorney's fee in connection with this matter, Plaintiff's application is denied because Plaintiff is proceeding *pro se*."); *Ware v. Transport Drivers, Inc.*, 30 F. Supp. 3d 273, 274 n.5 (D. Del. 2014)

that the Executive and Administrative Orders adopted in response to the pandemic exceed the State's authority under New Jersey law, lack a rational basis, and violate the U.S. Constitution. (*Id.*)  Specifically, Plaintiff claims that the Executive Orders prohibit ingress to and egress from his Margate property, and limits interstate travel and interstate commerce.  (*Id.* at ¶ 22.)  Further, Plaintiff alleges that the Orders "have no conceivable rational basis . . . [and] constitute harmful regulatory quackery and violate the U.S. Constitution and New Jersey Law." (*Id.* at ¶ 4.)  He maintains that Democratic governors instituted these restrictions to "destroy the achievements of the Trump administration" and "[t]his ordinary cold virus was a pretextual use of the law."[3] (*Id.* at ¶ 12.)  Plaintiff asserts that he has standing to sue on behalf of his patients and all psychiatric patients in New Jersey, who, he alleges, will be at a greater risk for "despair deaths" due to the restrictions he seeks to challenge.  (*Id.* at ¶ 17.)

In the instant matter, Defendants move to dismiss the Amended Complaint, arguing 1) Plaintiff's claims are moot because the Orders he challenges have been rescinded, 2) Plaintiff cannot establish standing because he suffered no injury-in-fact, and 3) he fails to state a claim for relief.[4]

---

("Plaintiff currently proceeds *pro se*, and, therefore, attorneys fees are not recoverable."); *Kay v. Ehrler*, 499 U.S. 432, 435–36 (1991) (stating that "the word "attorney assumes an agency relationship," and "an attorney-client relationship").

[3] While Plaintiff makes a number of unsubstantiated submissions about the nature of COVID-19 and the motivation behind Defendants' response to the public health crisis, the Court is particularly troubled by Plaintiff's letter to the Court, which appears to make a comparison between a judge's refusal to carry out genocidal orders in Nazi Germany and Plaintiff's request that the Court deny Defendants' motion. Such a farfetched attempt to equate the two is wholly inappropriate. (ECF No. 19.)

[4] Defendants also argue that Plaintiff's state law claims must be dismissed because Defendants enjoy sovereign immunity with respect to those claims.  Because I find that Plaintiff's Amended Complaint should be dismissed for mootness and lack of standing, I need not address sovereign immunity.

## II. STANDARD OF REVIEW

### A. Mootness

Generally, a case becomes moot when the dispute no longer presents a live controversy or the parties lack a cognizable interest in the outcome. *See County of Morris v. Nationalist Movement*, 273 F.3d 527, 533 (3d Cir. 2001); *Prysock v. U.S. Parole Comm'n*, No. 08-5116 (JBS), 2010 U.S. Dist. LEXIS 44286, at *6 (D.N.J. May 6, 2010). A defendant's voluntarily cessation of the alleged wrongful behavior "does not moot a case or controversy unless 'subsequent events ma[ke] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur . . . .'" *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007) (quoting *Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).). "[T]he central question of all mootness problems is whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." *Jersey Cent. Power & Light Co. v. N.J.*, 772 F.2d 35, 39 (3d Cir. 1985).

### B. Standing

Under Fed. R. Civ. P. 12(b)(1), a court must grant a motion to dismiss if it lacks subject matter jurisdiction to hear a claim. *See* Fed. R. Civ. P. 12(b)(1). "A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, No. 1999-130, 2006 U.S. Dist. LEXIS 96631, at *3 (D.V.I. Sep. 21, 2006), *aff'd* 486 F.3d 806 (3d Cir. 2007); *see St. Thomas - St. John Hotel & Tourism Ass'n v. U.S. Virgin Islands*, 218 F.3d 232, 240 (3d Cir. 2000) ("The issue of standing is jurisdictional."). "On a motion to dismiss for lack of standing, the plaintiff bears the burden of establishing the elements of standing, and each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of

evidence required at the successive stages of the litigation." *Ballentine*, U.S. Dist. LEXIS 96631, at *3-4 (internal quotation marks omitted).  To show standing, a plaintiff must establish: "(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 272 (3d Cir. 2016) (quoting *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016)).

### III. ANALYSIS

#### A. Plaintiff's Claims are Moot

The Amended Complaint alleges that Executive Order 107 causes two harms to Plaintiff: 1) it prevents Plaintiff from renting his Margate property to seasonal tenants, and 2) it increases the likelihood that his patients might suffer mental illness, thus leading to their suicide and inability to pay for his services.  In their Motion to Dismiss, Defendants argue that Plaintiff's claims are moot, because Executive Order 107 was rescinded by the signing of Executive Order 153.  (Def. Mot., at 8.)  In response, Plaintiff asserts that his claims should not be dismissed for mootness because Defendants fail to show that the allegedly wrongful behavior cannot reasonably be expected to recur, and the claims brought by Plaintiff are capable of repetition.  (Plaintiff's Brief in Opposition ("Pl. Br."), at 4.)  I disagree with Plaintiff.

Due to a decrease of reported COVID-19 cases, Governor Murphy issued various executive orders that lifted some of the restrictions on businesses and individuals previously imposed.  (Def. Mot., at 5.)  Specifically, Executive Order 153 rescinded the stay-at-home order imposed by Executive Order 107, Executive Order 154 allowed personal care services to resume starting on June 22, 2020, and Executive Order 157 allowed indoor dining and indoor recreational and entertainment businesses to reopen starting on July 2, 2020.  Because Defendants terminated the

5

alleged unlawful conduct, "[t]he raison d'etre for the injunction no longer exists." *Black United Fund of N.J., Inc. v. Kean*, 763 F.2d 156, 160 (3d Cir. 1985) (finding the case moot where the statute challenged had been repealed and new legislation enacted). Notably, Plaintiff only seeks prospective injunctive relief. He does not seek past money damages for either the loss of rental profits in connection with his Margate property, nor does he seek any damages associated with unpaid professional services provided to his patients. As the executive order at issue has been rescinded, no meaningful relief may be provided by the Court.

Furthermore, the allegedly wrongful behavior cannot reasonably be expected to recur. "This criterion has been interpreted to require more than speculation that a challenged activity will be resumed." *Thompson v. United States Dep't of Labor*, 813 F.2d 48, 51 (3d Cir. 1987) (citing *Preiser v. Newkirk*, 422 U.S. 395, 403 (1975)). Moreover, whether the change was in response to the litigation "weighs against mootness." *Fields v. Speaker of the Pa. House of Representatives*, 936 F.3d 142, 161 (3d Cir. 2019).

Here, Governor Murphy has already issued numerous executive orders easing restrictions in New Jersey, and the change in policy is a clear response to the decreased number of COVID-19 cases in New Jersey since Executive Order 107 was issued, not Plaintiff's suit or for the purpose of evading review. *See* N.J. Exec. Order No. 152 (June 9, 2020), https://nj.gov/infobank/eo/056murphy/pdf/EO-153.pdf ("[I]t it is appropriate to lift the Order requiring New Jersey residents to remain home or at their place of residence."); N.J. Exec. Order No. 161 (July 2, 2020), https://nj.gov/infobank/eo/056murphy/pdf/EO-181.pdf (Easing restrictions on the number of individuals permitted at outdoor gatherings); N.J. Exec. Order No. 183 (Sept. 1, 2020), https://nj.gov/infobank/eo/056murphy/pdf/EO-183.pdf (Allowing indoor dining and entertainment centers to operate with capacity limits and health and safety protocols).

Indeed, the text of Executive Order 153, which rescinded Executive Order 107, explicitly states that the reopening process began because of the "decrease in the rate of reported new cases of COVID-19 in New Jersey, including a reduction in the total number of individuals being admitted to hospitals for COVID-19. . . ." N.J. Exec. Order No. 153 (June 9, 2020), https://nj.gov/infobank/eo/056murphy/pdf/EO-153.pdf.  The statistics also confirm that Governor Murphy's reduction in restrictions was attributed to the decreasing number of COVID-19 positive cases, and clearly, not this litigation or some other related reasons.  On March 21, 2020, when Governor Murphy issued Executive Order 107, New Jersey reported 1,787 new cases according to the New Jersey Department of Health.  New cases in New Jersey peaked on April 1, 2020, with a reported 4,846 positive COVID-19 tests.  On September 30, 2020, 432 new cases were reported.

Even if COVID-19 rises, and there certainly is an uptick, it is speculative that Defendants would implement new restrictions that would allegedly injure Plaintiff, including those impacting his ability to derive rental profits from his Margate property, a seasonal rental property.  Indeed, Plaintiff provides no evidence to suggest that Governor Murphy intends to implement new restrictions imminently, let alone restrictions akin to the ones alleged in this action to have caused Plaintiff's harm.  More importantly, Plaintiff's alleged harm from his so-called "despair deaths" is specifically addressed and remedied by the challenged Executive Order, which allowed citizens to travel for medical care and treatment, and furthermore, psychiatrists, like Plaintiff, may conduct virtual sessions and still receive compensation for their services.  As such, this alleged injury, as discussed more fully *infra*, is based on nothing more than Plaintiff's disagreement with the State's public health policies.  In any event, if new restrictions were issued in response to a rise in COVID-19 cases, Plaintiff is not without recourse.  He could bring new claims, if appropriate, to challenge

those executive orders. Accordingly, I find that Plaintiff's claims are moot and dismissed with prejudice.

### B. Plaintiff Cannot Establish Standing

#### i. *Article III Test*

In addition to mootness, Defendants argue that Plaintiff lacks standing, because he cannot establish an injury-in-fact. In response, Plaintiff contends that he has demonstrated an injury-in-fact because the harm alleged by Executive Order 107 is the "increasing likelihood of despair deaths of Plaintiff's patients due to the economic shutdown and resulting recession . . . ." (Pl. Br., at 11.) Given Plaintiff's failure to provide any evidence of a specific and concrete injury-in-fact beyond mere speculation, Plaintiff's claims must also be dismissed for lack of Article III standing.

To allege injury-in-fact, "a plaintiff must claim the invasion of a concrete and particularized legally protected interest resulting in harm that is actual or imminent, not conjectural or hypothetical." *Nickelodeon*, 827 F.3d at 272 (quoting *Finkelman*, 810 F.3d at 193) (internal quotations omitted). A harm is "concrete" only "if it is '*de facto*'; that is, it must actually exist"—it cannot be merely "abstract." *Id.* (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016)). To satisfy the injury-in-fact requirement, the injury must be "particularized," such that it affects the plaintiff in a "personal and individual way." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n. 1 (1992). The Supreme Court has emphasized that the injury must also be "concrete in both a qualitative and temporal sense"; *i.e.*, the "complainant must allege an injury to himself that is distinct and palpable, as opposed to merely [a]bstract, and the alleged harm must be actual or imminent, not conjectural or 'hypothetical." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (internal quotations and citations omitted).

To that end, allegations of a potential future injury, or the mere possibility of a future injury, will not establish standing. *See id.* at 158; *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) ("Allegations of 'possible future injury' are not sufficient to satisfy Article III."). Because injunctions regulate future conduct, a party seeking prospective injunctive relief, as is the case here, must demonstrate a "real and immediate" threat of future harm—not merely a speculative or hypothetical threat of future harm. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (finding the plaintiff lacked standing to enjoin police use of chokeholds absent sufficient likelihood that he would be wrongfully choked by police in the future); *Doe v. Nat'l Bd. of Med. Exam'rs ("Doe II")*, 210 Fed. Appx. 157, 159–60 (3d Cir.2006) (finding plaintiff lacked standing to seek injunction barring disclosure of disabled status on medical examination scores, absent realistic, non-hypothetical fear that state licensing board would discriminate against him in the future due to disclosure). "Past illegal conduct is insufficient to warrant injunctive relief unless it is accompanied by 'continuing, present adverse effects.'" *Doe II*, 210 Fed. Appx. at 160 (citing *Lyons*, 461 U.S. at 102). "Likewise, intentions to return to the source of the illegal conduct 'some day'—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the requisite actual or imminent injury." *Dempsey v. Pistol Pete's Beef N Beer, LLC*, No. 08-5454, 2009 WL 3584597 at *4 (D.N.J. Oct. 26, 2009) (internal quotations omitted) (citing *Lujan*, 504 U.S. at 564, where affiant lacked standing to seek injunction protecting endangered animals, because she merely professed intent to "some day" return to observe them, but had no "concrete plans" to do so).

Here, Plaintiff alleges no imminent or impending injury to himself. Rather, he merely postulates that Executive Order 107, which has since been rescinded, would cause an economic recession, which would in turn cause some of his New Jersey patients to commit suicide, and in

9

that regard, he would potentially lose medical payments for his services and emotionally impact him. (Pl. Br., at 8.) This vague and attenuated speculation is neither concrete, nor particularized. Plaintiff provides no basis for his assertions that the Executive Orders increase the likelihood of "despair deaths of Plaintiff's patients . . ." and will result in the deaths of 150,000 people over the next eight years, besides his saying so. (Pl. Br., at 11.) Similarly, Plaintiff pleads no facts evidencing a loss of income to him resulting from the deaths of patients due to the Orders issued by Defendants.[5] Furthermore, Plaintiff's unseemly claim that patient suicides would mean a loss of a patients, and a concomitant economic loss to him, borders on conscience shocking; it reduces potential loss of life to an economic consequence to this physician. And, to the contrary, common sense dictates that if shutdowns from the pandemic result in increased numbers of depression among the citizenry, necessarily, Plaintiff's psychiatric practice would see an increase in patients and a larger economic benefit to him.

Although Plaintiff does not claim that his inability to rent his Margate property constitutes an injury-in-fact, the Court finds that argument equally unpersuasive. As found above, Governor Murphy rescinded Executive Order 107, and therefore, no immediate threat exists to Plaintiff's ability to rent his Margate home. Again, Plaintiff provides no evidence that restrictions will be reintroduced, and therefore, any alleged harm is pure speculation. Accordingly, because Plaintiff

---

[5] None of the cases cited by Plaintiff are apposite to the present case. In those cases, the increased risk of harm had an evidentiary basis. *See Duke Power Co. v. Carolina Envtl. Study Grp.*, 438 U.S. 59, 74-75 (1978) (finding appellees had standing because the potential immediate adverse effects of the operation of planned nuclear plants, including thermal pollution of lakes and emission of non-natural radiation, was found to harm appellees sufficiently to qualify as injury in fact.); *Carlough v. Amchem Prods., Inc.*, 834 F. Supp. 1437, 1454 (E.D. Pa. 1993) (finding that due to lack of a dispute on whether asbestos is a toxin and the available medical data on the health consequences of exposure to asbestos, the plaintiffs' "exposure to a toxic substance constitutes sufficient injury in fact to give a plaintiff standing to sue in federal court.").

has failed to show that an immediate risk of harm exists for himself, or even for his patients, he lacks Article III standing.

### ii. *Third-Party Standing Doctrine*

Defendants assert that Plaintiff failed to establish third-party standing because he has not suffered an injury-in-fact and he has not shown a close relationship with any New Jersey patients. In response, Plaintiff argues he does have third-party standing to assert the rights of his patients as their psychiatrist, and he suffered an injury-in-fact. Again, I find Plaintiff's argument unpersuasive.

The longstanding basic rule of third-party standing is that "[i]n the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Powers v. Ohio*, 499 U.S. 400, 410 (1991). In order to establish third-party standing, "(1) the plaintiff must suffer injury; (2) the plaintiff and the third party must have a 'close relationship'; and (3) the third party must face some obstacles that prevent it from pursuing its own claims." *Interactive Media Entm't & Gaming Ass'n v. Att'y Gen. of the U.S.*, 580 F.3d 113, 118 (3d Cir. 2009) (quoting *Nasir v. Morgan*, 350 F.3d 366, 376 (3d Cir. 2003)).

As discussed, *supra*, Plaintiff failed to establish injury-in-fact, and therefore he does not have third-party standing. *See Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 299 (3d Cir. 2003) ("[W]ell-settled precedent makes clear that it is only possible to find third-party standing when there is also an injury in fact alleged by the first party plaintiff."). Furthermore, the cases raised by Plaintiff are simply not analogous. In *Pa. Psychiatric Soc'y*, it was uncontested that the plaintiffs, a medical society comprised of psychiatrists, properly pled that the policies of defendants, several managed health care organizations, economically injured the plaintiffs and

undermined their ability to provide quality health care. *Pa. Psychiatric Soc'y v. Green Spring Health Servs., Inc.*, 280 F. 3d 278, 289 (3d. Cir. 2002). Here, Plaintiff failed to show that he has suffered a loss of a patient or loss of income like the plaintiffs in *Pa. Psychiatric Soc'y*. Rather, Plaintiff provides no evidence of how Executive Order 107 interfered with Plaintiff's ability to treat his patients. Indeed, as explained above, New Jersey residents seeking medical treatment were granted an exception to consult with their healthcare providers. *See* N.J. Exec. Order No. 107 (March 21, 2020), https://nj.gov/infobank/eo/056murphy/pdf/EO-107.pdf. Without further evidence of any such injury, Plaintiff's claims are mere conjecture and made out of whole cloth. Accordingly, the Court does not need to analyze the second and third prongs of third-party standing. Plaintiff is not entitled to third-party standing.[6]

---

[6] Defendants also seek to dismiss Plaintiff's claims for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). While Fed. R. Civ. P. 8(a)(2) does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). Plaintiff establishes no specific facts that plausibly give rise to an entitlement to relief. He merely states that the orders violate the Commerce Clause, and the Fifth, Ninth, and Fourteenth Amendments of the United States Constitution, which is insufficient to support a claim under *Twombly*.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, the Court finds that Plaintiff's claims are moot, and Plaintiff has failed to establish standing. Accordingly, Defendants' Motion to Dismiss is **GRANTED**;[7] all claims against Defendants are dismissed with prejudice.[8]

Dated: October 30, 2020                                /s/ Freda L. Wolfson
                                                       Hon. Freda L. Wolfson
                                                       U.S. Chief District Judge

---

[7] Based on the Court's findings herein, Plaintiff's motion for judicial notice of adjudicative facts, which was filed on September 16, 2020, is dismissed as moot.

[8] Plaintiff asks that I permit him to amend his Complaint to more fully articulate the basis for his claims. "An applicant seeking leave to amend a pleading has the burden of showing that justice requires the amendment." *Katzenmoyer v. City of Reading,* 158 F. Supp. 2d 491, 497 (E.D. Pa. 2001). Factors that weigh against granting leave to amend include, "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. . . . ." *Foman v. Davis,* 371 U.S. 178, 182 (1962). Given the recission of Executive Order 107 and Plaintiff's lack of standing, amendment would be futile. As such, Plaintiff's request for leave to amend is denied.